Renea I. Saade (Bar No. 0911060)
risaade@stoel.com
STOEL RIVES LLP
510 L Street, Suite 500
Anchorage, AK  99501
Telephone:  (907) 277-1900
Facsimile:  (907) 277-1920

Attorneys for Plaintiff

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| XTREME CONSULTING GROUP, INC., a Washington corporation,<br><br>     Plaintiff,<br><br>  v.<br><br>RAZOR CONSULTING SOLUTIONS, INC., a North Dakota corporation, ERIC MAUCH, an individual, DELENE GOEHRING, an individual, DARCY HOBAN, an individual, HOBAN CONSULTING, LLC, a Minnesota limited liability company, MOSHE SEBASTIEN SELLAM, an individual, MARIYA SCHUMACHER, an individual, JOHN MCANDREW, an individual, ALEXA HOEKSTRA, an individual, and JULIE GALE, an individual,<br><br>     Defendant. | No. _____<br><br>COMPLAINT FOR INJUNCTIVE AND OTHER RELIEF |

## I.  INTRODUCTION

1. Plaintiff Xtreme Consulting Group, Inc. (Xtreme) brings this action for injunctive and other relief to prevent the Defendants' ongoing, unlawful campaign to interfere with Xtreme's existing business and employment relationships.  Defendants'

COMPLAINT FOR INJUNCTIVE AND OTHER RELIEF - Page 1
XTREME CONSULTING GROUP, INC. v. RAZOR CONSULTING SOLUTIONS, INC., et. al.

**STOEL RIVES LLP**
510 L Street, Suite 500, Anchorage, AK  99501
*Main (907) 277-1900   Fax (907) 277-1920*

campaign was made possible when Defendant Eric Mauch (Mauch) gained access to and misappropriated Xtreme's trade secrets and other confidential, proprietary information (collectively, "Confidential Information") through his former position at Microsoft Corporation, one of Xtreme's most important clients.   During his employment at Microsoft, in which he routinely had access to and handled bids submitted by Xtreme, Mauch was simultaneously setting up Defendant Razor Consulting Solutions, Inc. (Razor), a company intended to compete directly with Xtreme primarily for work in the Fargo, North Dakota area supporting Microsoft's Fargo operations.

2.      Since Mauch departed from Microsoft in late 2012, Mauch and Razor have systematically and unlawfully diverted existing and prospective business away from Xtreme and to Razor.   They have done so using the Xtreme-owned Confidential Information to which Mauch had access at Microsoft, and by unlawfully inducing six critical Xtreme employees and one independent contractor to end their relationships with Xtreme and—in violation of their ongoing noncompetition obligations—begin employment with Razor.

3.      Without Xtreme's Confidential Information or the employees and independent contractor who were unlawfully induced into breaching their employment agreements, Razor and Mauch would have no proper means of identifying, obtaining, or even handling the particular business they have diverted from Xtreme.   In turn, Xtreme also believes that at least one of those employees has participated in Razor's illegal campaign to divert business and employees away from Xtreme and to Razor.

STOEL RIVES LLP
510 L Street, Suite 500, Anchorage, AK  99501
Main (907) 277-1900   Fax (907) 277-1920

STOEL RIVES LLP
510 L Street, Suite 500, Anchorage, AK  99501
Main (907) 277-1900   Fax (907) 277-1920

4.     For those reasons, Xtreme also seeks injunctive relief against its former employees and independent contractor to enforce their ongoing noncompetition and nonsolicitation obligations.

Accordingly, Xtreme alleges as follows:

## II.  PARTIES

5.     Xtreme is a Washington corporation with a principal place of business located in King County, Washington.

6.     Razor is a North Dakota corporation with a principal place of business in Fargo, North Dakota.

7.     Mauch is an individual with a last known residence in Fargo, North Dakota.

8.     Defendant Delene Goehring (Goehring) is an individual with a last known residence in Hawley, Minnesota.

9.     Defendant Darcy Hoban (Hoban) is an individual with a last known residence in Hawley, Minnesota.  She owns and operates a consulting firm called Hoban Consulting, LLC (Hoban Consulting), a limited liability company registered to do business in Minnesota.

10.     Defendant Moshe Sebastien Sellam (Sellam) is an individual with a last known residence in Fargo, North Dakota.

11.     Defendant Mariya Schumacher (Schumacher) is an individual with a last known residence in West Fargo, North Dakota.

12.     Defendant John McAndrew (McAndrew) is an individual with a last known residence in West Fargo, North Dakota.

13.     Defendant Alexa Hoekstra (Hoekstra) is an individual with a last known residence in Stillwater, Minnesota.

14.     Defendant Julie Gale (Gale) is an individual with a last known residence in Denver, Colorado.

### III.  JURISDICTION AND VENUE

15.     This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332, *i.e.*, based on diversity of citizenship and an amount in controversy exceeding $75,000.

16.     Venue is proper in this Court pursuant to 28 U.S.C. § 1391 because a substantial part of property that is the subject of the action is situated in this District. Additionally, venue is proper in this Court because Defendants Goehring, Hoban, Hoban Consulting, Sellam, Schumacher, McAndrew, Hoekstra, and Gale each consented to this Court's jurisdiction and venue in their employment agreements (or, in Hoban and Hoban Consulting's case, their independent contractor agreement) with Xtreme.

### IV.  GENERAL ALLEGATIONS

**A.      Xtreme Develops and Maintains Trade Secrets and Other Confidential, Proprietary Information Related to Its Status as a Microsoft Preferred Vendor.**

17.     Xtreme is a Kirkland, Washington based consulting company that provides project, event, product management, business analysis, and other related services to a range of clients across the country.  The employees and contractors who provide service to clients have developed expertise in a diverse range of areas, including financial and accounting services, corporate strategy, business operations, event and conference support, and a variety of others.

18.     Xtreme is a preferred vendor for Microsoft and provides staffing and consulting services to a number of work groups within Microsoft, including groups

**STOEL RIVES LLP**
510 L Street, Suite 500, Anchorage, AK  99501
*Main (907) 277-1900    Fax (907) 277-1920*

located in Microsoft's operations in Fargo, North Dakota. Some employees are physically present at Microsoft's offices in Fargo, while others provide services for Microsoft from other locations or, in some cases, other states. The Xtreme office that serves Microsoft's Fargo operations is a "satellite" office with only two full-time, on-site employees. All Xtreme employees who provide services to Microsoft's Fargo operations report to Xtreme's Washington corporate office. Xtreme has successfully serviced and supported Microsoft's Fargo operations for over six years.

19.     In the course of its business, Xtreme develops and maintains a broad range of Confidential Information, the protection of which is critical to Xtreme's ongoing commercial success. Xtreme's Confidential Information includes, but is not limited to, the rates it charges its clients, the nature and purposes of its prospective and ongoing projects and staffing positions for its clients, the compensation it provides to its employees and independent contractors, and the backgrounds, experience, and skillsets of the employees and independent contractors who provide staffing services to its clients. That information is not readily ascertainable through proper means by any person or entity, including Xtreme's competitors, who might derive economic value from it. The information is valuable to Xtreme because of its confidentiality; among other things, its confidentiality prohibits competitors from "poaching" the staffing positions Xtreme services for its clients.

20.     Competition in the technical consulting industry is fierce. For that reason, Xtreme takes several critical precautionary steps to protect its Confidential Information. Those measures include, but are not limited to, requiring all employees and contractors who have access to Confidential Information first to sign written nondisclosure

STOEL RIVES LLP
510 L Street, Suite 500, Anchorage, AK  99501
Main (907) 277-1900   Fax (907) 277-1920

agreements; requiring all such employees and contractors to agree to return all Confidential Information in their possession at the conclusion of their relationship with Xtreme; and storing Confidential Information on secure, password-protected databases located on servers in Xtreme's Kirkland headquarters.  Moreover, Microsoft and Xtreme regularly agree to keep critical project-related information, such as rates, requirements, and staffing, confidential.   The unauthorized or improper disclosure of Xtreme's Confidential Information would severely and irreparably harm its business.  In some cases, because the harm would affect Xtreme's goodwill with Microsoft and other clients, such harm may be difficult or impossible to quantify.

**B.      Defendants' Contractual Obligations to Xtreme.**

21.     On or about September 29, 2008, Xtreme hired Goehring as an employee. In connection with her hire, Goehring agreed to and executed an Employment Agreement ("the Goehring Agreement"), which she signed on the same day.  A true and accurate redacted copy of the Goehring Agreement is attached hereto as **Exhibit A**.  Goehring worked on Xtreme's behalf in Pricing and Licensing for the Microsoft Business Services (MBS) Division in Fargo.

22.     On or about July 15, 2013, Xtreme entered into an Independent Contractor Professional Services Agreement with Hoban's company, Hoban Consulting, LLC (Hoban Consulting) through Hoban (the Hoban Agreement). Hoban signed the Agreement on the same day.  A true and correct redactedbcopy of the Hoban Agreement is attached hereto as **Exhibit B**.  Hoban worked on Xtreme's behalf in AOC Channel Incentives for the MBS Division.

STOEL RIVES LLP
510 L Street, Suite 500, Anchorage, AK  99501
Main (907) 277-1900   Fax (907) 277-1920

**STOEL RIVES** LLP
510 L Street, Suite 500, Anchorage, AK  99501
*Main (907) 277-1900    Fax (907) 277-1920*

23.     On or about July 23, 2008, Xtreme hired Sellam as an employee.   In connection with his hire, Sellam agreed to and executed an Employment Agreement (the Sellam Agreement), which he signed on the same day.  A true and accurate redacted copy of the Sellam Agreement is attached hereto as **Exhibit C**.  Sellam worked on Xtreme's behalf in Commercial OPS BIOS COGS for Microsoft's WW Operations Division in Fargo.

24.     On or about January 16, 2013, Xtreme hired Schumacher as an employee. In connection with her hire, Schumacher agreed to and executed an Employment Agreement (the Schumacher Agreement), which she signed on the same day.  A true and accurate redacted copy of the Schumacher Agreement is attached hereto as **Exhibit D**. Schumacher worked on Xtreme's behalf in Operations Launch for the MBS Division.

25.     On or about November 20, 2012, Xtreme hired McAndrew as an employee.   In connection with his hire, McAndrew agreed to and executed an Employment Agreement (the McAndrew Agreement), which he signed on the same day. A true and accurate redacted copy of the McAndrew Agreement is attached hereto as **Exhibit E**.  McAndrew worked on Xtreme's behalf in Financial Operations Support for Microsoft's Finance Group in Fargo.

26.     On or about January 9, 2009, Xtreme hired Hoekstra as an employee.  In connection with her hire, Hoekstra agreed to and executed an Employment Agreement (the Hoekstra Agreement), which she signed on the same day.  A true and accurate redacted copy of the Hoekstra Agreement is attached hereto as **Exhibit F**.  Hoekstra worked on Xtreme's behalf in Events & Conference Support for the MBS Division.

27.     On or about March 8, 2014, Xtreme hired Gale as an employee.  She reported to a Microsoft manager based in Seattle, Washington.  In connection with her hire, Gale agreed to and executed an Employment Agreement (the Gale Agreement), which she signed on the same day.  A true and accurate redacted copy of the Gale Agreement is attached hereto as **Exhibit G**.  Gale worked on Xtreme's behalf in Services & Support for the MBS Division.

28.     The agreements described in paragraphs 21 through 27 are collectively referred to herein as "the Agreements."  Each of the Agreements contains a valid, enforceable noncompetition clause.  Through those noncompetition clauses, Goehring, Hoban, Sellam, Schumacher, McAndrew, Hoekstra and Gale (individually, "Individual Defendant" and collectively, "Individual Defendants") each Defendant agreed not to compete directly or indirectly with Xtreme during or for one year after the conclusion of the Individual Defendant's relationship with Xtreme.  Each of the Agreements defines "compete" to include providing services to Microsoft or other Xtreme clients that are similar to those provided by Xtreme.

29.     Each of the Agreements contains a valid, enforceable customer nonsolicitation clause.  Through those customer nonsolicitation clauses, each Individual Defendant agreed not to solicit any business similar to the services provided by Xtreme from Xtreme's clients or suppliers during or for one year after the conclusion of the Individual Defendant's relationship with Xtreme.  The Agreements bar all such solicitation by Individual Defendants, regardless of whether an Individual Defendant does so for his or her own benefit or for the benefit of any third party.  The Agreements expressly contemplated that the Individual Defendants would provide services to

STOEL RIVES LLP
510 L Street, Suite 500, Anchorage, AK 99501
Main (907) 277-1900   Fax (907) 277-1920

Microsoft, either by defining Microsoft as a "client" or by requiring the Individual Defendants to abide by Microsoft's Vendor Code of Conduct and Non-Disclosure Agreement.

30. Each of the Agreements contains a valid, enforceable employee nonsolicitation/no-hire clause. Through those customer nonsolicitation/no-hire clauses, each Individual Defendant agreed not to solicit or hire any current or former Xtreme employee or independent contractor, provided, in the case of former employees and contractors, that the employee or contractor worked for Xtreme within the past three months and has no active noncompetition obligations. The Individual Defendants further agreed not to solicit known prospective employee or independent contractors of Xtreme.

31. Additionally, the Hoban Agreement contained a conflict of interest clause providing that, "[f]or a period of six months following any termination, [Hoban] shall not," (1) "directly or indirectly, hire, solicit, or encourage leaving [Xtreme's] employment, any employee, consultant, or contractor of [Xtreme]," or (2) "hir[e] any such employee, consultant, or contractor who has left [Xtreme's] employment or contractual engagement within one year of such employment or engagement."

32. The Agreements require the Individual Defendants at all times to protect the confidentiality of Xtreme's Confidential Information, described further above. The Individual Defendants were obligated not to use any such information except in the course of performing their duties for Xtreme, and to return all such information upon departing from Xtreme. Defendants' obligation to protect Xtreme's Confidential Information continues indefinitely following their respective departures. The Individual Defendants also agreed to assign to Xtreme all ideas, improvements, inventions, plans,

STOEL RIVES LLP
510 L Street, Suite 500, Anchorage, AK 99501
Main (907) 277-1900 Fax (907) 277-1920

data, and information developed during their relationships with Xtreme, to the fullest extent permitted by Washington law.  That information, which Xtreme owns and which each Individual Defendant was obligated not to use or disclose without authorization, expressly included "sales, costs, profits, and pricing methods" and "employee, prospective employee, client, and prospective client lists."

33.    Additionally, all of the Agreements except the Hoban Agreement contains a non-disparagement clause whereby the Individual Defendants (except Hoban) agreed not to "disparage or otherwise defame [Xtreme], any other former or current Employee, or any Client."

34.    Each of the Agreements contains a choice of law clause providing that the Agreement would be construed according to Washington law.  Each of the Agreements also contains a forum selection clause designating Washington as the forum for litigating any disputes related to the Agreements.

**C.    While Representing Microsoft in Transactions with Xtreme, Mauch Gains Access to Xtreme's Confidential Information and Secretly Organizes Razor, a Business Intended to Compete Directly with Xtreme.**

35.    On information and belief, since at least October 2010, Mauch has been setting up and operating Razor, which he co-founded with Carla Schwartzenberger, another former Microsoft employee.  Razor was issued a North Dakota business license in January 2013.

36.    Razor competes with Xtreme; according to its website, Razor also provides "technology and consulting services, professional design, and financial services."  It targets clients in the technology industry and in other sectors.

STOEL RIVES LLP
510 L Street, Suite 500, Anchorage, AK  99501
Main (907) 277-1900   Fax (907) 277-1920

37.    Mauch also worked for Microsoft as a Global Business Intelligence and Development Manager until November 2012, when he resigned.  During that time, he was Microsoft's primary contact with Xtreme regarding the team of Xtreme consultants who worked for Microsoft's MBS Division.

38.    Xtreme responded to several Microsoft requests for proposals (RFPs) by contacting or working with Mauch directly.  Through those RFPs, and thus by virtue of his position at Microsoft, Mauch was given access to written and electronic documents containing the rates that Xtreme regularly charges to Microsoft, the rates Xtreme charged for the services of the Individual Defendants, the nature of the projects and services that Xtreme provides to Microsoft, Xtreme's staffing arrangements on those projects, and information about the backgrounds, experience, and skillsets of the employees and independent contractors on Xtreme's Microsoft team.  If he were not a Microsoft employee, Mauch would have had no other proper way of accessing that information.

39.    The information to which Mauch was given access is Xtreme-owned Confidential Information, which, by virtue of his status as a Microsoft employee, Mauch was obligated to protect pursuant to Xtreme's various agreements with Microsoft. Additionally, Microsoft's Standards of Business Conduct require Mauch not to use Microsoft-related confidential information for personal advantage or for non-Microsoft business use, even after his employment with Microsoft ended.

40.    During his employment with Microsoft, and while he was dealing with Xtreme on behalf of Microsoft, Mauch never disclosed to Xtreme that he had started or intended to start a business that would compete with Xtreme.

COMPLAINT FOR INJUNCTIVE AND OTHER RELIEF - Page 11
XTREME CONSULTING GROUP, INC. v. RAZOR CONSULTING SOLUTIONS, INC., et. al.

**D.   Defendants Breach Their Statutory, Contractual, and Common-Law Duties to Xtreme.**

41.     While still employed by Microsoft, Mauch approached Xtreme and indicated that he would ensure that Xtreme received additional business from Microsoft if it would eventually hire him as an employee or independent contractor.  Xtreme declined Mauch's proposal.

42.     Over the past several months, Razor and Mauch have improperly solicited and hired each of the Individual Defendants (Goehring, Hoban, Sellam, Schumacher, McAndrew, Hoekstra, and Gale) to work at Razor, where they all remain employed or working as independent contractors.

43.     Goehring gave notice of her resignation on February 13, 2014, and her last date of employment with Xtreme was February 28, 2014.  On or about March 3, 2014, she accepted and began a job with Razor.  On information and belief, she is working in substantially the same role for Microsoft on behalf of Razor as she did while employed by Xtreme.

44.     Hoban gave notice that she was terminating her independent contractor relationship with Xtreme on March 14, 2014, and her last date with Xtreme was March 31, 2014.  On or about April 1, 2014, she accepted and began a job with Razor.  On information and belief, she is working in substantially the same role for Microsoft on behalf of Razor as she did while working for Xtreme.

45.     Sellam gave notice of his resignation on June 30, 2014.  He was on vacation from July 1 through July 18, 2014, which was his last date of employment with Xtreme.  On or about July 1, 2014, he accepted and began a job with Razor.  On

STOEL RIVES LLP
510 L Street, Suite 500, Anchorage, AK  99501
Main (907) 277-1900   Fax (907) 277-1920

information and belief, he is working in substantially the same role for Microsoft on behalf of Razor as he did while employed by Xtreme.

46.     Schumacher gave notice of her resignation on March 13, 2014, and her last date of employment with Xtreme was March 31, 2014.  On or about April 1, 2014, she accepted and began a job with Razor.  On information and belief, she is working in substantially the same role for Microsoft on behalf of Razor as she did while employed by Xtreme.

47.     Through his on-site supervisor at Microsoft, McAndrew gave notice of his resignation on March 4, 2014, and his last date of employment with Xtreme was March 31, 2014.  On or about April 1, 2014, he accepted and began a job with Razor.  On information and belief, he is working in substantially the same role for Microsoft on behalf of Razor as he did while employed by Xtreme.

48.     Hoekstra gave notice of her resignation on June 16, 2014, and her last date of employment with Xtreme was June 30, 2014.  On or about July 1, 2014, she accepted and began a job with Razor.  On information and belief, she is working in substantially the same role for Microsoft on behalf of Razor as she did while employed by Xtreme.

49.     Gale gave notice of her resignation on June 13, 2014, and her last date of employment with Xtreme was June 30, 2014.  On or about July 1, 2014, she accepted and began a job with Razor.  On information and belief, she is working in substantially the same role for Microsoft on behalf of Razor as she did while employed by Xtreme.

50.     Razor and Mauch solicited away and hired the Individual Defendants (Goehring, Hoban, Sellam, Schumacher, McAndrew, Hoekstra, and Gale) with, on

STOEL RIVES LLP
510 L Street, Suite 500, Anchorage, AK  99501
Main (907) 277-1900   Fax (907) 277-1920

information and belief, full knowledge of the existence of their noncompetition, nonsolicitation, and nondisclosure obligations to Xtreme.

51.    Razor and Mauch are presently aware of all of the Individual Defendants' existing contractual obligations to Xtreme, but nevertheless permit them to continue working for Razor.

52.    Razor and Mauch solicited away and hired each of the Individual Defendants (Goehring, Hoban, Sellam, Schumacher, McAndrew, Hoekstra, and Gale) partly by using Xtreme-owned Confidential Information that Mauch learned while employed by Microsoft, which he had a duty to use only for Microsoft-related purposes. The Confidential Information that Razor and Mauch used in soliciting away and hiring Goehring, Hoban, Sellam, Schumacher, McAndrew, Hoekstra, and Gale included the nature and purpose of the services provided for Microsoft, and their backgrounds, experience, and skillsets.

53.    Absent knowledge of Xtreme's confidential information, Razor and Mauch would have no proper means of knowing which Xtreme employees to recruit for which Microsoft positions.

54.    Additionally, following his departure from Microsoft, Mauch improperly and without authorization used the Xtreme Confidential Information he accessed through his position at Microsoft improperly to divert Microsoft business away from Xtreme and to Razor.   In total, Razor and Mauch have diverted seven existing and prospective Microsoft purchase orders away from Xtreme using Xtreme's Confidential Information, including, on information and belief, Xtreme's confidential rate information and information related to the types of services Xtreme regularly provides to Microsoft.

**STOEL RIVES** LLP
510 L Street, Suite 500, Anchorage, AK  99501
*Main (907) 277-1900   Fax (907) 277-1920*

STOEL RIVES LLP
510 L Street, Suite 500, Anchorage, AK 99501
Main (907) 277-1900   Fax (907) 277-1920

55.     On information and belief, Goehring has actively aided and assisted Mauch and Razor in soliciting away and hiring other current or prospective Xtreme employees, and in diverting Microsoft business from Xtreme to Razor.  She has done so in part by disclosing Confidential Information concerning Xtreme employees' compensation, experience, skillsets, and past, current, or future projects at Microsoft.

56.     Solely through its unlawful use of Xtreme's Confidential Information and unlawful interference with Xtreme's contractual relationships with its employees and Microsoft, Razor has, in a matter of months, become a preferred Microsoft vendor.

57.     Goehring, Mauch, Hoban, Sellam, Schumacher, McAndrew and Hoekstra each had to have shared their confidential compensation information and details related to Xtreme's purchase orders with Microsoft for each of the services in order for Razo to obtain replacement purchase orders from Microsoft for their continued services. Therefore, each of the Individual Defendants also must have used and disclosed Xtreme's confidential information.

58.     As a result of improper and unauthorized activities of Razor, Mauch, Goehring, Hoban, Sellam, Schumacher, McAndrew, Hoekstra and Gale (collectively, the "Defendants"), Xtreme's scope of work for Microsoft's Fargo operations has significantly reduced, and Xtreme's monthly revenue from its work with Microsoft has decreased since the Individual Defendants' departures from Xtreme.

59.     Had the Individual Defendants resigned and abided by the requirements of their noncompetition agreements, Xtreme would have been able to replace them and continue providing the services associated with their positions at Microsoft. Alternatively, had they stayed with Xtreme either as employees or independent

contractors, Xtreme would have continued to serve as the vendor for the roles they are currently serving within Microsoft on behalf of Razor, and obtained the revenue associated with that work.

60.     However, because of the Individual Defendants' continued work with Microsoft on behalf of Razor, Xtreme has been deprived of the opportunity to continue to service Microsoft for their positions and, as a consequence, has lost that revenue.

**E.      Xtreme Attempts to Resolve This Dispute Informally, But Defendants Continue Their Misconduct.**

61.     After it came to Xtreme's attention that Razor and Mauch were unlawfully using its Confidential Information and interfering with its employment and business relationships, and that its former employees were performing for Razor essentially the same services in the same roles they did while employed by Xtreme, Xtreme sent letters to Razor and Mauch demanding that they cease and desist from their ongoing misconduct. A true and accurate copy of that letter (without exhibits), which was sent on July 31, 2014 is attached hereto as **Exhibit H.** Xtreme also forwarded that letter to the other Defendants.

62.     Despite Xtreme's cease and desist demand, Razor and Mauch have not taken any action to end or modify their working relationships with the Individual Defendants.

63.     Despite Xtreme's cease and desist demand, none of the Individual Defendants have taken any action to end or modify their working relationship with Razor or Microsoft's Fargo operations.

64.     On information and belief, Defendants have also engaged in various communications with others within and outside of Microsoft in an effort to disparage

STOEL RIVES LLP
510 L Street, Suite 500, Anchorage, AK  99501
Main (907) 277-1900    Fax (907) 277-1920

Xtreme and interfere with Xtreme's ongoing work with Microsoft and Xtreme's efforts to expand its work within Microsoft.

65.     On information and belief, Defendants have also made misrepresentations to one another and third parties concerning Xtreme in an attempt to persuade other Xtreme employees to leave Xtreme to work with Razor.

66.     Because Defendants show no indication that they intend to cease and desist their wrongful conduct, Xtreme must seek immediate court intervention on this matter.

## V.  CLAIMS FOR RELIEF

### First Claim for Relief—Breach of Contract

### (Against Individual Defendants)

67.     Xtreme re-alleges and incorporates herein paragraphs 1 through 66, above.

68.     Xtreme's Agreements with the Individual Defendants (Goehring, Hoban, Hoban Consulting, Sellam, Schumacher, McAndrew, Hoekstra, and Gale) are valid and enforceable contracts.

69.     Xtreme has performed all of the duties imposed on it by each of its Agreements with the Individual Defendants.

70.     The Agreements imposed several duties on each of the Individual Defendants.  Those duties included:

a)     the duty not to compete with Xtreme by providing services similar to those provided by Xtreme during or for one year following the conclusion of the Individual Defendants' employment or independent contractor relationship with Xtreme;

STOEL RIVES LLP
510 L Street, Suite 500, Anchorage, AK  99501
Main (907) 277-1900   Fax (907) 277-1920

b)      the duty not to solicit any business similar to the services provided by Xtreme from Xtreme's clients or suppliers during or for one year after the conclusion of the Individual Defendant's relationship with Xtreme, whether for the employee or independent contractor's own benefit or for the benefit of any third party;

c)      the duty not to solicit or hire, or obtain employment for, or assist in soliciting, hiring, or obtaining employment for, any current or former Xtreme employee or independent contractor, or any known prospective employee or independent contractors of Xtreme;

d)      the duty at all times to protect Xtreme's Confidential Information from unauthorized use or disclosure; and

e)      the duty not to disparage or otherwise defame Xtreme, any other former or current employee of Xtreme, or any of Xtreme's clients.

71.     The Individual Defendants each breached, and continue to breach, their respective Agreements with Xtreme in the following ways:

a)      by accepting employment with Razor, which competes directly with Xtreme in the technical consulting industry, and remaining employed by Razor in positions at Microsoft in which they have provided and continue to provide services similar to those provided by Xtreme;

b)      by soliciting and assisting, directly and indirectly, in the diversion of business with Microsoft, an existing client of Xtreme, from Xtreme to Razor;

c)      as to Individual Defendant Goehring, and, on information and belief, as to Individual Defendants Hoban, Hoban Consulting, Sellam, Schumacher, McAndrew, Hoekstra, and Gale, by soliciting and inducing, directly and indirectly, current and

**STOEL RIVES** LLP
510 L Street, Suite 500, Anchorage, AK  99501
*Main (907) 277-1900    Fax (907) 277-1920*

prospective Xtreme employees and independent contractors to end their existing or prospective relationships with Xtreme and instead join Razor;

   d)  on information and belief, by improperly disclosing Xtreme's Confidential Information without authorization to Razor and Mauch, in part to assist them in soliciting Xtreme employees and diverting Xtreme business with Microsoft to Razor; and

   e)  as to Individual Defendant Goehring, and, on information and belief, as to Individual Defendants Sellam, Schumacher, McAndrew, Hoekstra, and Gale by disparaging Xtreme, its employees, and its services to Microsoft and other third parties.

   72.  Xtreme has suffered damages as a result of the Individual Defendants' breach of their Agreements in the form of lost revenue that it would have obtained through existing and prospective projects for Microsoft, which Razor has now taken over.

   73.  Xtreme has suffered and will continue to suffer irreparable harm as a result of the Individual Defendants' breaches, including, for example, a loss of its Confidential Information and impairment of its existing and ongoing business relationship with Microsoft.  Accordingly, Xtreme is entitled to injunctive relief restraining and enjoining the Individual Defendants (Goehring, Hoban, Hoban Consulting, Sellam, Schumacher, McAndrew, Hoekstra, and Gale) from (1) being or remaining employed by or otherwise affiliated with Mauch and Razor, and (2) in any way retaining, using, or disclosing any of Xtreme's Confidential Information.

### Second Claim for Relief—Interference with Contract

### (Against Defendants Razor, Mauch, and Goehring)

   74.  Xtreme re-alleges and incorporates herein paragraphs 1 through 73, above.

STOEL RIVES LLP
510 L Street, Suite 500, Anchorage, AK  99501
Main (907) 277-1900   Fax (907) 277-1920

COMPLAINT FOR INJUNCTIVE AND OTHER RELIEF - Page 19
XTREME CONSULTING GROUP, INC. v. RAZOR CONSULTING SOLUTIONS, INC., et. al.

75.     Xtreme's Agreements with the Individual Defendants (Goehring, Hoban, Hoban Consulting, Sellam, Schumacher, McAndrew, Hoekstra, and Gale) are valid and enforceable contracts.

76.     Prior to Razor' employment or working relationship with the Individual Defendants, Razor and Mauch had knowledge that Goehring, Hoban, Hoban Consulting, Sellam, Schumacher, McAndrew, Hoekstra, and Gale had existing employment or independent contractor relationships with Xtreme pursuant to written agreements.  On information and belief, Razor and Mauch knew that the written agreements imposed noncompetition, nonsolicitation, and nondisclosure obligations on the Individual Defendants.

77.     Prior to Razor's employment or working with the Individual Defendants, Goehring had knowledge that Hoban, Hoban Consulting, Sellam, Schumacher, McAndrew, Hoekstra and Gale had existing employment or independent contractor relationships with Xtreme pursuant to written agreements.  Goehring knew that the written agreements imposed noncompetition, nonsolicitation, and nondisclosure obligations on the Individual Defendants.

78.     Razor, Mauch, and Goehring are presently aware that the Agreements imposed noncompetition, nonsolicitation, and nondisclosure obligations on the Individual Defendants.

79.     Razor, Mauch, and Goehring have intentionally interfered and induced and caused the Individual Defendants (Goehring, Hoban, Hoban Consulting, Sellam, Schumacher, McAndrew, Hoekstra, and Gale) to breach their Agreements with Xtreme in the following ways:

**STOEL RIVES LLP**
510 L Street, Suite 500, Anchorage, AK  99501
*Main (907) 277-1900   Fax (907) 277-1920*

a)      by soliciting and inducing them to end their employment or independent contractor relationships with Xtreme, and employing them in positions at Razor in which they provide services to Microsoft's Fargo operations that are similar to those they provided to Microsoft's Fargo operations while affiliated with Xtreme;

b)      by employing them in positions in which their assigned job duties include soliciting business from Microsoft's Fargo operations on behalf of Razor;

c)      in continuing to employ them in those positions to this date;

d)      on information and belief, by encouraging and inducing them to solicit Xtreme employees to end their employment with Xtreme and to become employed by Razor;

e)      on information and belief, by soliciting and inducing them to disclose Xtreme's Confidential Information to Razor and Mauch;

f)      on information and belief, by encouraging and inducing them to disparage Xtreme, its employees, and its services to Microsoft and other third parties.

80.      Razor, Mauch, and Goehring committed the interference described above for the improper purposes of (i) gaining access to Xtreme's Confidential Information, (ii) interfering with Xtreme's business expectancies in violation of its noncompetition agreements with its employees, and (iii) unfairly diverting existing and prospective business with Microsoft from Xtreme to Razor.

81.      Razor, Mauch, and Goehring committed the interference described above using improper means, in that they accomplished the interference partly (i) by making disparaging statements about Xtreme, its employees, and its services to the then-current Xtreme employees it was attempting to recruit, and (ii) by improperly using Confidential

STOEL RIVES LLP
510 L Street, Suite 500, Anchorage, AK  99501
Main (907) 277-1900   Fax (907) 277-1920

**STOEL RIVES** LLP
510 L Street, Suite 500, Anchorage, AK 99501
*Main (907) 277-1900   Fax (907) 277-1920*

Information concerning Xtreme that Mauch acquired by virtue of his position at Microsoft, and which Mauch was at all times obligated to use only for Microsoft-related purposes.

82.     As a direct result of the interference described above, Xtreme has suffered damages in the form of lost revenue, as described more fully above.

83.     Xtreme has suffered and will continue to suffer irreparable harm as a result of Defendants' interference, including, for example, a loss of its Confidential Information and impairment of its existing and ongoing business relationship with Microsoft.  Accordingly, Xtreme is entitled to injunctive relief restraining and enjoining Defendants Razor and Mauch from (1) employing, contracting with, or otherwise being commercially affiliated with any current or former Xtreme employee or independent contractor with active noncompete obligations, including Individual Defendant Goehring, and (2) in any way retaining, using, or disclosing any of Xtreme's Confidential Information.

### **Third Claim for Relief—Misappropriation of Trade Secrets (RCW Chapter 19.108)**

### **(Against Defendants Razor, Mauch, and Goehring)**

84.     Xtreme re-alleges and incorporates herein paragraphs 1 through 83, above

85.     Xtreme possesses a variety of trade secrets as defined in RCW 19.108.010(4), including the rates it charges its clients, the nature and purposes of its prospective and ongoing projects for its clients, the compensation it provides to its employees and independent contractors, and the backgrounds, experience, and skillsets of the employees and independent contractors it provides to its clients.

COMPLAINT FOR INJUNCTIVE AND OTHER RELIEF - Page 22
XTREME CONSULTING GROUP, INC. v. RAZOR CONSULTING SOLUTIONS, INC., et. al.

STOEL RIVES LLP
510 L Street, Suite 500, Anchorage, AK 99501
Main (907) 277-1900   Fax (907) 277-1920

86. Xtreme's trade secret information is not readily ascertainable through proper means by any person or entity, including Xtreme's competitors, who might derive economic value from it.  Furthermore, it derives actual and potential independent economic value from not being generally known to those persons and entities, because its confidentiality prohibits competitors from "poaching" the positions Xtreme services for its clients.

87. Xtreme's trade secret information is the subject of reasonable efforts to maintain its secrecy.

88. The Individual Defendants were given access to Xtreme's trade secret information in connection with their employment or working relationship with Xtreme. They were and remain subject to a duty imposed by Xtreme to maintain its secrecy and to use it only in furtherance of Xtreme's business.

89. Mauch was given access to Xtreme's trade secret information in connection with his employment at Microsoft.  Pursuant to Xtreme's vendor agreements with Microsoft and Microsoft's own Standards of Business Conduct, Mauch was and remains subject to a duty to maintain the secrecy of Xtreme's trade secret information and to use it only in connection with his duties at Microsoft, and not for his own or any third party's benefit.

90. Mauch and the Individual Defendants, on their own behalf or on behalf of Razor, misappropriated Xtreme's trade secret information in the following ways:

a) by disclosing and using the Xtreme trade secret information described above to identify, solicit, and induce particular Xtreme employees and independent contractors to leave Xtreme and become employed or contracted by Razor, all when they

COMPLAINT FOR INJUNCTIVE AND OTHER RELIEF - Page 23
XTREME CONSULTING GROUP, INC. v. RAZOR CONSULTING SOLUTIONS, INC., et. al.

**STOEL RIVES** LLP
510 L Street, Suite 500, Anchorage, AK  99501
*Main (907) 277-1900   Fax (907) 277-1920*

knew or had reason to know that their knowledge of Xtreme's trade secrets was acquired, either directly or through another person, under circumstances giving rise to a duty to maintain its secrecy and not to use it in that way; and

      b)      by disclosing and using the Xtreme trade secret information described above to identify, solicit, and divert Xtreme's existing and prospective business with Microsoft's Fargo operations away from Xtreme and to Razor, all when they knew or had reason to know that their knowledge of Xtreme's trade secrets was acquired, either directly or through another person, under circumstances giving rise to a duty to maintain its secrecy and not to use it in that way.

      91.      Mauch and the Individual Defendants threaten to continue misappropriating Xtreme's trade secret information in the manner described above to benefit themselves and/or Razor.

      92.      As a direct result of Defendants' misappropriation of Xtreme's trade secret information, Xtreme has suffered damages in the form of lost revenue, as described more fully above.

      93.      Additionally, as a direct result of Defendants' misappropriation, Defendants have been unjustly enriched.  Accordingly, Xtreme is entitled to damages for Defendants' unjust enrichment that is not taken into account in computing Xtreme's actual loss.

      94.      Defendants' misappropriation was done willfully and maliciously. Accordingly, Xtreme is entitled to exemplary damages and an award of attorneys' fees.

      95.      Xtreme has suffered and will continue to suffer irreparable harm as a result of Defendants' misappropriation, including a loss of the confidentiality of its trade

STOEL RIVES LLP
510 L Street, Suite 500, Anchorage, AK  99501
Main (907) 277-1900   Fax (907) 277-1920

secrets and impairment of its existing and ongoing business relationship with Microsoft. Accordingly, Xtreme is entitled to injunctive relief restraining and enjoining Defendants from, in any way, retaining, using, or disclosing any of Xtreme's trade secrets or other Confidential Information.

## VI.  PRAYER FOR RELIEF

WHEREFORE, Xtreme prays for relief and judgment as follows:

1.      Preliminary and permanent injunctive relief restraining and enjoining: (1) Goehring, Hoban, Hoban Consulting, Sellam, Schumacher, McAndrew, Hoekstra, and Gale, and all persons or entities acting in concert or participation with them, from continuing any direct and/or indirect employment or other working relationship with Razor in violation of their respective non-competition obligations to Xtreme, and from violating any of their other existing contractual obligations to Xtreme, including their nonsolicitation obligations, in any way; (2) Razor and Mauch, and all persons or entities acting in concert or participation with them, from employing, contracting with, or otherwise being commercially affiliated with any current or former Xtreme employee or independent contractor with active an active noncompetition obligation; and (3) Razor, Mauch, Goehring, Hoban, Hoban Consulting, Sellam, Schumacher, McAndrew, Hoekstra, and Gale, and all persons or entities acting in concert or participation with them, from in any way retaining, using, disclosing, or otherwise misappropriating any of Xtreme's Confidential Information;

2.      An order requiring all Defendants to provide an accounting of all revenue, income, profit and/or other benefits realized by each respective defendant or by any persons or entities acting in concert or participation with them, as a result of services

COMPLAINT FOR INJUNCTIVE AND OTHER RELIEF - Page 25
XTREME CONSULTING GROUP, INC. v. RAZOR CONSULTING SOLUTIONS, INC., et. al.

provided by Goehring, Hoban, Hoban Consulting, Sellam, Schumacher, McAndrew, Hoekstra, and Gale to Microsoft on behalf of Razor;

3.    A judgment awarding Xtreme compensatory, punitive, exemplary, and all other damages permitted by applicable law, and appropriate interest on such damages as allowed by applicable law;

4.    An award of all reasonable attorneys' fees and costs incurred by Xtreme as allowed by applicable law; and

5.    An award of any and all other and further relief as the Court may deem just and equitable.

DATED:  September 11, 2014.

STOEL RIVES LLP

_____
Renea I. Saade (Bar No. 0911060)
510 L Street, Suite 500
Anchorage, Alaska  99501
Direct phone: 907.263.8412
Email: risaade@stoel.com

Attorneys for Plaintiff

STOEL RIVES LLP
510 L Street, Suite 500, Anchorage, AK  99501
Main (907) 277-1900   Fax (907) 277-1920